**SIGNED THIS: June 20, 2024**

_____
**William V. Altenberger**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

IN RE:                                     )
                                           )
     **JOHN K. KESLER,**            )          Case No.   24-90018
                                           )
          **Debtor.**            )

**O P I N I O N**

There are two matters before the Court. The first is confirmation of the Debtor's proposed

Chapter 13 plan, to which Stephen Cassady (Creditor) objects. The second is the Creditor's proof

of claim, to which the Debtor objects. A hearing was held on both matters which were taken

under advisement with the parties to file simultaneous briefs.

The facts are not in dispute. In September of 2016, the Debtor and the Creditor entered

into an Installment Contract For The Sale of Real Estate (Contract) wherein the Creditor was the

seller and the Debtor was the purchaser. The Contract called for a down payment of $8,000, with

the balance of $35,000 plus interest at 2% to be paid in 54 equal monthly payments of $500. The

balance under the Contract was due in March of 2021. If any monthly payment was more than 10

days late, a $25 late payment fee was due. The Contract also provided that in the event of

litigation the prevailing party was entitled to reasonable attorney fees, court costs and related

expenses. The Debtor made some of the monthly payments, but stopped doing so. At the time he

stopped, there was a remaining principal balance due on the Contract of $7,500.[1]

In January of 2024, the Debtor filed a Chapter 13 case in Bankruptcy (Case). His Chapter

13 plan (Plan) relies on §1322 of the Bankruptcy Code, 11 U.S.C. §1322, and proposes to pay the

Creditor the principal of $7,500 plus 2% interest in monthly installments of $500. The Creditor

objected to the Plan, contending that interest on the Contract should be 2% up until the filing of

the Case and thereafter, pursuant to §1325(a)(5)(B) of the Bankruptcy Code, 11 U.S.C.

§1325(a)(5)(B) and the Supreme Court's decision in *Till v. SCS Credit Corp.*, 541 U.S. 465

(2004) (Till), at a rate which is determined by adding a risk premium to the prime rate (Till rate).

The Creditor filed a proof of claim for $7,500 in principal, $450 in interest through the

date of filing of the Case and $750 for attorney fees, for a total of $8,700. The Debtor objected to

the proof of claim on the basis that interest at the rate of 2% to the date of the filing of the Case

was only $220.75 and that, in the context of a bankruptcy filing, the Creditor is not entitled to

attorney fees as he is not a prevailing party.

At the hearing on these matters, the major disagreement between the Debtor and the

Creditor was the rate of interest the Debtor is required to pay after the filing of the Case. They

framed the issue as simply being whether §1322 or §1325 was controlling. The Debtor, relying

---

[1] The Debtor's brief sets forth other facts. These facts were not presented at the time of the hearing. Nor are they relevant to the issue to be decided. Therefore they will not be considered.

on §1322, argued that interest on the unpaid principal should be computed at 2% in accordance with the Contract until paid in full. The Creditor, relying on §1325, argued interest on the unpaid principal should be at the 2% rate until the date of the filing of the Case and thereafter at the Till rate of 10%. Their analysis is incomplete. A more detailed analysis of the two sections is required.

Section 1322 sets forth the contents of a plan. Section 1322(b) provides in part that a plan may…

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence …

(3) provide for the curing of any default;

* * *

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time … on any … secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Section 1322(c) provides that notwithstanding subsection (b)(2) …

(1) a default with respect to … a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale …; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to §1325 of [the Bankruptcy Code].

Section 1322(b) contains general plan provisions a debtor may include in a plan and §1322(c) provides for exceptions to the general provisions for a claim secured by a debtor's principal residence.

In the Case before this Court, the Creditor's security is the Debtor's principal residence and the last payment under the Contract came due before the Case was filed and when the last payment under the Plan was due. It follows that §1322(c)(1) allows the Debtor to cure the default under paragraph §1322(b)(3) and §1322(c)(2) allows the Debtor to modify the Creditor's rights under §1322(b)(2).

The Debtor's Plan seeks to cure the default by paying the principal with interest of 2% by monthly payments equal to those called for by the Contract. But the Plan does not provide for payment of late fees as required by the Contract or, more importantly, does not promptly cure the delinquent payment of the $7,500 in principal. The Contract provides for a lump sum payment of the Contract balance in March of 2021. The Debtor's Plan would change the lump sum payment due in March of 2021 to monthly payments and extend repayment by at least another 15 months from the date the Case was filed to approximately April of 2025 or later. That is approximately a 4 year delay in payment of the Contract and constitutes a modification.

Support for this interpretation of §1322(c)(1) is found in §1322(b)(5) which allows the curing of a default where "the last payment is due after the date on which the last payment under the plan is due." If Congress had intended a similar result under §1322(c)(1), where the last payment on the claim is due before the last payment under the plan is due, it could have said so. It did not.

As the proposed Plan does not cure the payment of the late fees and modifies the nature of the repayment and the time for repayment, it can not be confirmed as being a cure under §1322(b) and §1322(c).

4

The provisions of §1325, governing confirmation of a plan, also need to be considered. This section provides in part as follows:

(a) … the court shall confirm a plan if–

> (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

> * * *

> (5) with respect to each allowed secured claim provided for by the plan–

> * * *

>> (B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

For confirmation, §1325(a)(5)(B)(ii) requires that deferred cash payments provide a present dollar value of the property to be distributed in the future equals the amount of the allowed secured claim. See 8 Collier on Bankruptcy ¶ 1325.06[3][b][ii] (16th 2024). The Debtor's Plan does not meet this requirement as it does not provide for a present dollar value adjustment, but merely continues interest at the 2% rate. As the provisions of §1325(a)(5)(B)(ii) and the holding in Till are not met, the Plan can not be confirmed with a modification. A prime plus rate would satisfy the present dollar value requirements of §1325(a)(5)(B)(ii) and Till.

As the requirements of §1322 have not been met, the requirements of §1325(a)(1) also have not been met. Furthermore, the Debtor's Plan does not constitute a cure, but a modification, which does not meet the requirements of §1325(a)(5)(B)(ii). Therefore, the Plan can not be confirmed.

5

Turning to the Creditor's proof of claim and the Debtor's objection to it, the proof of claim should be allowed in part and denied in part as it claims the principal amount due along with interest at the 2% rate up to the date of the filing of the Chapter 13 case, but incorrectly claims attorney fees. The Contract provides for attorney fees to a prevailing party. The Creditor's proof of claim merely lists $750 for attorney fees, without specifics as to the nature of legal services, when they were performed and the results obtained. So it can not be determined if the Creditor is a prevailing party. If there is an issue as to the correct calculation of interest at the 2% rate, the parties should be able resolve the issue without a further ruling from this Court.

In summary, the Debtor can cure the default under the Contract, but his plan is deficient because it does not provide for payment of late fees or a prompt payment of the unpaid balance due on the Contract. He can modify the Contract, but has not proposed to do so. An amended plan is required. The Creditor's proof of claim should be amended to delete the claim for attorney fees, to add late fees and, if necessary, to recalculate the interest at the 2% rate. The Debtor and the Creditor shall have 28 days to do so.

See order entered this date.

### ###